# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

MALCOLM J. SANDERS,

                              Petitioner,

v.

MICHAEL MEISNER,[1]

                              Respondent.

Case No. 21-CV-229-JPS

**ORDER**

## 1.    INTRODUCTION

On February 20, 2021, Petitioner Malcolm J. Sanders ("Petitioner") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. On September 13, 2021, this Court screened the petition and set a briefing schedule. ECF No. 4.

Respondent filed an answer on October 11, 2021. ECF No. 8. On November 24, 2021, Petitioner filed a brief in support of his § 2254 petition. ECF No. 10. On January 21, 2022, Respondent Dylon Radtke ("Respondent") filed a brief in opposition. ECF No. 11. And on February 14, 2022, Petitioner filed a reply. ECF No. 12. For the reasons stated herein, the Court will deny the § 2254 petition.

---

[1]The State of Wisconsin's Offender Search indicates that Petitioner was transferred from the Green Bay Correctional Institution to the Fox Lake Correctional Institution in March 2023. Accordingly, the Court will instruct the Clerk of Court to replace Warden Dylon Radtke with Warden Michael Meisner on the docket.

## 2. BACKGROUND

### 2.1 Petitioner's Underlying Criminal Case

This § 2254 petition arises out of Petitioner's conviction in Kenosha County Circuit Court Case No. 2016CF677. Petitioner was charged in that case on June 15, 2016. *See State of Wisconsin v. Malcolm J. Sanders,* No. 2016CF000677 (Kenosha County Cir. Ct. 2016), available at https://wcca.wicourts.gov/caseDetail.html?caseNo=2016CF000677&county No=30&index=0&mode=details. He faced two counts of delivering heroin, as a repeater and as a party to a crime. *Id.* His jury trial began on March 27, 2017. *Id.* The jury reached a verdict of guilty on both counts on March 29, 2017. *Id.* The circuit court sentenced Petitioner to a total of seventeen years. ECF No. 8-1 at 1.

### 2.2 Voir Dire

On March 27, 2017, the first day of Petitioner's trial, the circuit court conducted voir dire. ECF No. 8-12 at 1. The relevant portion of voir dire took place as follows:

> State: Is there anyone here who has had—and I'm not going to pry into details, but anyone here who has had a prior bad experience with law enforcement? If so, please raise your hand.
>
> (Hands are raised.)
>
> State: All right . . . . I believe that is Ms. [R]. Now, again, I indicated I would not pry into details, but what I'm really asking here is whether you your [sic] prior experience with law enforcement would affect your ability to be fair in this case.
>
> Ms. [R]: Yes.
>
> State: All right. And so does that mean that you would count the testimony of law enforcement officers

|            | as less credible than other witnesses, or is there some other way where you think your ability to be fair would be affected? |
| --- | --- |
| Ms. [R]: | I wouldn't—I have an issue with the police. I have been pulled over for driving in the wrong area, so my perception might be skewed. |
| State: | Okay. So when you are evaluating the testimony of law enforcement officers, would you believe their testimony to be less credible simply because they are law enforcement officers? |
| Ms. [R]: | Yes. |
| State: | And so overall evaluating the evidence in this case knowing that there's likely to be testimony from law enforcement officers, could you be fair? |
| Ms. [R]: | Yes. |
| State: | So in spite of what you told me regarding your concerns, you think overall in this case you could be fair? |
| Ms. [R]: | Yes, but like [a previous panel member], I just do not feel comfortable with this. |
| State: | Okay. So you have an issue of comfort. But, again, comfort isn't really the deciding question. The deciding question is whether you can be fair, so you think regardless of your comfort level, in the end could you evaluate the evidence in this case fairly? |
| Ms. [R]: | Yes. |
| State: | Okay. Thank you for your answers. |
| . . . | |
| State: | All right. How about the second row? Anybody have a prior bad experience with the law enforcement in the second row? . . . |

(Hand is raised.)

| | |
|---|---|
| State: | Mr. [O]? |
| Mr. [O]: | Yeah . . . . |
| . . . | |
| State: | Okay. So, again, I'm not going to try to pry into details, but given your prior experience, do you think you can be fair in this case? |
| Mr. [O]: | No. |
| State: | All right. And you heard the questions that I was asking Ms. [R]. Again, the overall question in this case is regarding evaluating the evidence, evaluating the testimony, which may include law enforcement. And so based upon that, do you think you can evaluate the evidence in a fair way? |
| Mr. [O]: | Honestly, no. |
| State: | Okay. I would move to strike Mr. [O] based upon those answers. |
| The court: | I am going to pry a little bit. Why do you think you would be unable to be fair to both sides? |
| Mr. [O]: | Personal reasons. |
| The court: | Well, do you—don't you think other people on the jury may have personal reasons that would affect their decision? . . . . Justice upstairs there is always depicted as blind, and she has always got the scales in balance . . . . The blindness is because she doesn't base her judgment on considerations that don't affect what is on the scale. She doesn't consider people's religion or their race, or any rich or poor. When judges take an oath, we take an oath to administer justice fairly without regard to persons, and some people will hear that and think what does that mean? You don't pay regard to people? Well, it means you administer justice without making any concessions for one person or another. You |

| | decide based upon what the facts dictate, and is there some reason you would be unable to do that? |
|---|---|
| Mr. [O]: | Yes. I'm sorry. It is just personal reasons. |
| The court: | I'm afraid I'm going to have to pry a little bit more, sir. |
| Mr. [O]: | I had a run-in when I was 16 with a cop. |
| The court: | Okay. |
| Mr. [O]: | And he threatened to beat my head in. |
| The court: | Okay. Do you think all the police are like that? |
| Mr. [O]: | I just—I don't know. I just don't trust them. |
| The court: | Well, you can't be too trusting. That is why you are here, because the founders of our country didn't trust me, and that is fine not trusting, and when you are judging what people are saying on the witness stand, whether they be police officers or somebody else, it's perfectly okay to be distrustful, but you have to be open-minded, and I'm wondering whether you are any less able to be open-minded than anybody else who is here. The jury brings people together from all backgrounds. There are people who have never had a problem with the police or whose experiences were all positive. I don't think you would suggest we have only jurors consisting of people who have had good experience with the police, do you? |
| Mr. [O]: | No. |
| The court: | So if I let you off because you had one bad experience with one bad police officer, what is going on? I'm going to repeat my question, and answer it honestly, and I'm not going to continue to examine you about it, but is there any reason for me to think you are any less likely to be fair to both sides than anyone else who is here? |

Case 2:21-cv-00229-JPS   Filed 04/21/23   Page 5 of 23   Document 13

| | |
|---|---|
| Mr. [O]: | Possibly. I'm just stuck in my ways right now. |
| The court: | I'm going to let the lawyers examine you further. I'm going to deny your request, but you can examine further on it if you want. |
| State: | Okay. I think you have answered sufficient questions. So now is there anyone else in the second row who I missed who has had a bad experience with law enforcement? |
| | (Hand is raised.) |
| State: | Mr. [S]? |
| Mr. [S]: | Mm-mmm. |
| State: | And, again, I'm not going to try to pry into details, but the question in the end, as I have been asking and as the judge has been asking, is whether you can listen to the evidence and evaluate it fairly. |
| Mr. [S]: | Honestly, I'm not sure. I would say I don't know, but based on my experience in the past, it probably would bubble up feelings of stuff that has happened to me in the past several times, and just to give a little detail, just being racially profiled in the past, and I don't know how that would come up in this case, but I have had it happen to me several times where I have just been pulled over without just cause. |
| State: | Okay. So, again, you heard the judge talk about people's prior experiences, and the question I want to ask you now is whether you think that you are less able to be fair than anyone else on the jury. |
| Mr. [S]: | Right now I don't think so. I mean, I'm saying I think I can be fair, but I'm just letting you know, you know, that has happened to me, and like I said, I don't know how that is going to come into this case as far as a reason for someone being pulled over or questioned or whatever the |

|            | case may be, but I'm letting you know that is what happened to me in my past. |
|------------|-----|
| State:     | I appreciate your honesty. |
| The court: | Let me ask both of you gentlemen if the evidence satisfies you beyond a reasonable doubt that the defendant committed the crimes charged or either of the crimes charged, would you be able to vote guilty? |
| Mr. [S]:   | I would say yes. |
| The court: | Would you be able to vote not guilty if the evidence did not come up to that standard? |
| Mr. [S]:   | Yes. |
| The court: | Mr. [O], how do you answer? |
| Mr. [O]:   | The second question, yes. |
| The court: | What about the first question? If the evidence satisfies you beyond a reasonable doubt that the defendant committed one or both of the crimes, would you be able to return a verdict of guilty? |
| Mr. [O]:   | Possibly. |
| The court: | Well, this one I've got to have an answer. |
| Mr. [O}:   | Yes or no? |
| The court: | Yes, sir. |
| Mr. [O]:   | Yes. |
| The court: | All right . . . . |
| . . .      |     |
| State:     | I'm asking both for yourself personally or if there was someone who was very close to you who has been arrested for a drug crime like a close family member or friend, so if it's either you, yourself, or a close family member or friend, please raise your hand. |

(Hands are raised.)

| | |
|---|---|
| State: | Okay. I'll start in the back with Ms. [R]. And, again, my question in the end, what I'm trying to determine, is whether that past experience, whether involving yourself or a close family member or friend, would cause you to be unfair in this case knowing that this case involves a drug allegation? |
| Ms. [R]: | My husband did time in prison for selling drugs. |
| State: | Okay. And do you feel that in your husband's case, he was treated fairly or unfairly? |
| Ms. [R]: | He was treated fairly. |
| State: | And was that some time ago, or was it recent? |
| Ms. [R]: | Eight years ago. |
| State: | All right. So given that experience, could you be fair in this case? |
| Ms. [R]: | Yes. |
| . . . | |
| State: | How about the second row here? |
| | (Hands are raised.) |
| Ms. [S]: | My son, and it was possession. |
| State: | Okay. Do you feel your son was treated fairly or unfairly? |
| Ms. [S]: | Unfairly. |
| State: | And was this a long time ago, or was this more recent? |
| Ms. [S]: | Within the last couple of years. |
| State: | Okay. Now, given your personal experience with your son, do you think you would be able to be fair in this case? |
| Ms. [S]: | Yes. |
| . . . | |

Case 2:21-cv-00229-JPS   Filed 04/21/23   Page 8 of 23   Document 13

| | |
|---|---|
| State: | Has anyone here, you, yourself personally, been charged with any crime? |

(Hands are raised.)

| | |
|---|---|
| Mr. [G]: | I was young. It was like 35 years ago. I was in the Marines, and somebody hit me and I hit him him [sic] back, and so— |
| State: | All right. So that was quite some time ago. |
| The court: | Isn't that part of the training? |
| Mr. [G]: | Yeah. I'm just being honest. It was like a really long time ago. It is the only time I have ever been arrested. He hit me and I hit him, and the charge was dropped, but I'm just— |
| The State: | I appreciate the answer. |
| Mr. [G]: | I have to admit it. I have been arrested. |
| State: | So would that affect your ability to be fair? . . . . Would that affect your ability to be fair? |
| Mr. [G]: | Not at all. |
| . . . | |
| The State: | Is there anyone here who thinks that really drugs should be legalized, illegal drugs currently like marijuana or cocaine or heroin, that that should become legal? |
| . . . | |
| Mr. [F]: | [Affirmative response] |
| The State: | . . . So my follow-up question is regardless of your personal opinion, would you be able to follow the judge's instructions regarding the law in this case? |
| Mr. [F]: | Yes, absolutely. |
| . . . | |
| The State: | Is there anyone here who thinks that circumstantial evidence is always going to be |

| | |
|---|---|
| | worse than direct evidence? Raise your hand if you believe so. |
| Unidentified Juror: | What do you mean by worse? |
| State: | Not as probative or not as valuable. |
| | (Hands are raised.) |
| State: | I see a few hands there. Now, what if the circumstantial evidence was something like a fingerprint that connects to a burglary? Would that necessarily be worse evidence than an eyewitness? Raise your hand if you think so. |
| | (Hand is raised.) |
| . . . | |
| State: | So in the end, the question that I'm getting to is whether you with [sic] fairly evaluate the evidence in this case, whether it is circumstantial or direct. |
| Ms. [M]: | I could, but if there was proof of prints, I mean, that sums it up. |
| State: | Okay. So you think that kind of the evidence could be quite strong? |
| Ms. [M]: | Very strong, yes. |

*Id*. at 22–40.

Following the conclusion of voir dire questioning, the panel members exited the courtroom. At that point, defense counsel Attorney Meyeroff ("Meyeroff") raised the issue of two Black panel members having been struck via peremptory challenge.

| | |
|---|---|
| Meyeroff: | Your Honor, the district attorney struck No. 9 and No. 25, and they are both black, and as long as they weren't struck for cause, I think they have to remain on the jury. |
| The court: | No. 25? No. No. 15. |

| Meyeroff: | 15, right. |
|---|---|

. . .

| The court: | [S]he also struck off Ms. [R]. She struck off Mr. [O]. She struck off Ms. [S], Mr. [S], and Mr. [F]. Did you want to give the reason on Mr. [S] and Ms. [R]? |
|---|---|
| State: | Yes. Both of those individuals expressed having prior bad experiences with the police, and although in the end they indicated they could be fair, they were quite hesitant and seemed to express feelings based upon their personal experiences of not trusting law enforcement and maybe looking more skeptically at law enforcement testimony than other witnesses, and that is the reason they were struck, which is also consistent with Mr. [O]. |
| The court: | Thank you. Did you want to respond? |
| Meyeroff: | Yes, Your Honor. Mr. [S] never expressed any hesitancy, and, you know, it's the very idea of why we need black people on the jury, because they are the ones who are harassed, you know, by the police, and, you know— |
| The court: | We don't need them because they are black. We need them because they are Americans. |
| Meyeroff: | We need them because they represent a cross-section of society, and if we exclude the black people because they have had bad experiences with the police, we don't get the broad cross-section because then we will only have white people who haven't had bad experiences with the police. That is the reason that *Kentucky vs. Batson* said unless the State can come up with valid reasons for excluding people, they cannot be excluded if they are black, and I think if they |

Case 2:21-cv-00229-JPS   Filed 04/21/23   Page 11 of 23   Document 13

weren't struck for cause, the reason is not valid enough.[2]

The court: Well, they have to—the State has to offer a race neutral explanation that isn't off the wall. It just can't be a camouflage. I don't think they have done that here, and the jurors came forward and acknowledged that they had experiences that caused them to be feeling that the police had ill-treated them, and that is not a sentiment exclusively held by blacks. There are plenty of white people, and Mr. [O], he was actually the most adamant of the three in my estimation, and he had the hardest time coming forward with a statement that he could vote to convict if the evidence was there.

In the end, I felt that they were qualified to make it to this phase in spite of their—Mr. [O] for sure at an earlier point when I deferred it or initially denied it, the answers he had given clearly could have led to his exclusion from the jury, but I'm a big believer in trying to keep people on if at all possible. I don't want them to go off because they might not be fair. I want them to really think about it. In the end, all three of them indicated a willingness to be fair. That doesn't mean that the district attorney has to accept that they would be ideal jurors for the State.

. . . I don't think the district attorney is off the wall in selecting these two as to be among their five people they strike. I don't think there is any reason for me to conclude it's because they are black. It may be that derivatively they have had bad experiences because they are black, but they

---

[2]That latter contention was in error. To survive a *Batson* challenge, the race-neutral explanation must be "clear and reasonably specific," but it "need not rise to the level justifying exercise of a challenge for cause." *Batson v. Kentucky*, 476 U.S. 79, 97–98 & n.20 (1986) (citation omitted); *United States v. Canoy*, 38 F.3d 893, 898 (7th Cir. 1994).

Case 2:21-cv-00229-JPS   Filed 04/21/23   Page 12 of 23   Document 13

are not being excluded now because that they are black, at least not—they have given a race neutral explanation.

. . . The district attorney cannot purposefully exclude people on the basis of the color of their skin, and I don't see the evidence to show that they have, so motion is denied.

Meyeroff: Just for the record, I have two points to make. One is that I think there is a higher bar that she has got to show when she excludes a black person as opposed to excluding somebody else, and if she excludes these two black people, there won't be any black people on the jury at all.

The court: . . . I hearken back to this idea that when it comes from a stereotype that blacks are going to be more likely to acquit a black defendant, that is a really foul thing. You know, I understand the desire of everybody to be judged by people—by his peers, fellow citizens, and not to have an obviously all white jury selected in that way or even by random chance. It's not the most desirable situation from a community standpoint, but it is not suggestive of any kind of discrimination, and there is no reason for me to keep someone to whom the district attorney has a legitimate objection to force the district attorney to keep that person on the jury just to make sure that the race identity of the jury is protected. I'm not going to buy into that, so your objection is noted, though, and it's denied.

*Id*. at 45–50.

## 2.3    Procedural History

On August 7, 2019, the Wisconsin Court of Appeals affirmed the trial court's conclusion that the prosecutor had a legitimate, race-neutral reason for striking the two Black jurors and did not engage in purposeful discrimination or with racially discriminatory intent. *See generally State v.*

Case 2:21-cv-00229-JPS   Filed 04/21/23   Page 13 of 23   Document 13

*Sanders,* 933 N.W.2d 670 (Wis. Ct. App. 2019). The Wisconsin Court of Appeals acknowledged Petitioner's argument that "the black jurors' reason for their bad experiences with police was they had been pulled over for the non-existent crime of Driving While Black," which Petitioner contended was not a "race-neutral" reason for striking the Black jurors. *Id*. ¶ 10 (quoting Petitioner's appellate brief). But the Wisconsin Court of Appeals rejected this argument, writing that "[b]ias against law enforcement and/or the criminal justice system more generally is a legitimate and very understandable reason for the State, when given the opportunity, to strike a potential juror." *Id*. ¶ 11. In support, the Wisconsin Court of Appeals cited, *inter alia*, *United States v. Carter*, wherein the Seventh Circuit concluded that an African-American panel member's antipolice sentiment was a sufficient and race-neutral basis for the exercise of a peremptory strike. 111 F.3d 509, 511–14 (7th Cir. 1997).

The Wisconsin Court of Appeals concluded that the "prosecutor here struck all four of the potential jurors who appeared to harbor some level of bias against law enforcement officers or the criminal justice system more generally—two were African-American, two were not." *Sanders*, 933 N.W.2d 670, ¶ 12. "[B]ased upon the totality of the voir dire discussion, we see no error in the circuit court's determination that the prosecutor had a legitimate, race-neutral reason for striking Ms. R. and Mr. S. from the jury and did not act with discriminatory intent." *Id*. "That Ms. R. and Mr. S. alleged that their prior experiences with law enforcement may have involved discriminatory intent does not detract from the prosecutor's legitimate, nondiscriminatory concern about potential bias against the State's case in this wholly unrelated proceeding." *Id*.

On November 13, 2019, the Wisconsin Supreme Court denied review. *State v. Sanders*, 936 N.W.2d 820 (Wis. 2019). And on March 30, 2020, the United States Supreme Court denied Petitioner's petition for writ of certiorari. *Sanders v. Wisconsin*, 140 S. Ct. 2583 (2020).

### 3.     STANDARD OF REVIEW ON HABEAS

State criminal convictions are generally considered final. Review may be had in federal court only on limited grounds. To obtain habeas relief from a state conviction, 28 U.S.C. § 2254(d)(1) (as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA")) requires the petitioner to show that the state court's decision on the merits of his constitutional claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Brown v. Payton*, 544 U.S. 133, 141 (2005). The burden of proof rests with the petitioner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The relevant decision for this Court to review is that of the last state court to rule on the merits of the petitioner's claim. *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006).

A state-court decision runs contrary to clearly established Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [those] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown*, 544 U.S. at 141. Similarly, a state court unreasonably applies clearly established Supreme Court precedent when it applies that precedent to the facts in an objectively unreasonable manner. *Id.*; *Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013).

The AEDPA undoubtedly mandates a deferential standard of review. The Supreme Court has "emphasized with rather unexpected

vigor" the strict limits imposed by Congress on the authority of federal habeas courts to overturn state criminal convictions. *Price v. Thurmer*, 637 F.3d 831, 839 (7th Cir. 2011). It is not enough for the petitioner to prove the state courts were wrong; he must also prove they acted unreasonably. *Harrington v. Richter*, 562 U.S. 86, 101 (2011); *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014) ("An 'unreasonable application of' federal law means 'objectively unreasonable, not merely wrong; even 'clear error' will not suffice.'") (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)).

Indeed, the petitioner must demonstrate that the state court decision is "so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (quoting *Harrington*, 562 U.S. at 102). The state court decisions must "be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002); *Hartjes v. Endicott*, 456 F.3d 786, 792 (7th Cir. 2006). Further, when a state court applies general constitutional standards, it is afforded even more latitude under the AEDPA in reaching decisions based on those standards. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

As the Supreme Court has explained, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102. Indeed, Section 2254(d) stops just short of "imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *See id.* This is so because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for

ordinary error correction through appeal." *Id.* at 102–03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)).

A federal court may also grant habeas relief on the alternative ground that the state court's adjudication of a constitutional claim was based upon an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). The underlying state court findings of fact and credibility determinations are, however, presumed correct. *Newman v. Harrington*, 726 F.3d 921, 928 (7th Cir. 2013). The petitioner overcomes that presumption only if he proves by clear and convincing evidence that those findings are wrong. 28 U.S.C. § 2254(e)(1); *Campbell*, 770 F.3d at 546. "A decision 'involves an unreasonable determination of the facts if it rests upon factfinding that ignores the clear and convincing weight of the evidence.'" *Bailey*, 735 F.3d at 949–50 (quoting *Goudy v. Basinger*, 604 F.3d 394, 399–400 (7th Cir. 2010)). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). If shown, an unreasonable factual determination by the state court means that this Court must review the claim in question *de novo*. *Carlson v. Jess*, 526 F.3d 1018, 1024 (7th Cir. 2008).

## 4. LAW & ANALYSIS

Petitioner alleges that the only two Black jurors in the venire in his Kenosha County Circuit Court trial were stricken by the State in violation of the Fourteenth Amendment. ECF No. 1 at 3. He argues specifically that a "black prospective juror's previous stop for Driving While Black is not a race-neutral reason to peremptorily strike the juror from a jury." *Id.* at 6. He asks the Court to conclude that the "state trial court's finding [that] the

State's peremptory strikes of the only two black jurors on Mr. Sander's panel was an unreasonable application of the law to the specific facts of this case." *Id*. Because the Wisconsin Court of Appeals, in affirming that the State's use of peremptory strikes against two Black jurors did not violate the Equal Protection Clause, made neither an unreasonable determination of the facts nor ran contrary to clearly established Supreme Court precedent, the Court will deny Petitioner's petition.

Notwithstanding that *Batson v. Kentucky* clearly controls, Petitioner cites *Batson* only once in his petition's "memorandum of law supporting habeas corpus relief." ECF No. 1 at 6. He recounts its holding in a single sentence. ECF No. 1 at 6; ECF No. 10 at 5. He does not thereafter discuss *Batson* again, nor does it discuss any other federal cases involving *Batson*. Instead, Petitioner relies on century-and-a-half-old precedent and asks the Court to "apply the basic legal principles of *Strauder, supra*, especially that the Fourteenth Amendment must be liberally construed to achieve its purposes, and the legal principles of suspect class jurisprudence to this case." ECF No. 1 at 9.

*Strauder v. West Virginia* is a United States Supreme Court case from 1879. 100 U.S. 303 (1879). In it, the United States Supreme Court concluded that a West Virginia statute that expressly excluded people of color from jury eligibility "amount[ed] to a denial of the equal protection of the laws." *Id*. at 310. It also, quite concerningly, held in no uncertain terms that a State could "prescribe the qualifications of its jurors, and in so doing make discriminations" by confining jury selection to "males, to freeholders, to citizens, to persons within certain ages, or to persons having educational

qualifications." *Id*. Unsurprisingly, Petitioner does not mention that portion of the case.[3]

Petitioner cannot simply ignore hundreds of years of precedent and ask this Court to essentially re-do over a century's worth of jurisprudence. Needless to say, this Court is not compelled to be guided by a case in which the United States Supreme Court so confidently confined juror eligibility to only educated males. And in asking the Court to do just that, Petitioner either ignores or severely misunderstands the limited purpose of habeas.[4]

Habeas is not the appropriate forum to attempt to redefine federal jurisprudence and create new constitutional rules of criminal procedure. *See, e.g., United States ex rel. Robinson v. Wilson*, No. 00-C-3598, 2001 U.S. Dist. LEXIS 3400, at *23 (N.D. Ill. Mar. 14, 2001). Habeas "has limited scope" and does not enable federal courts to "sit to re-try state cases *de novo." Milton v. Wainwright*, 407 U.S. 371, 377 (1972). It enables a federal court to intervene to correct a clear, indisputable constitutional wrong—not to replace the reviewing court's reasoned judgment with that of the state court on a post-hoc basis. *See Smith v. Phillips*, 455 U.S. 209, 221 (1982) ("Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."); 2 FEDERAL STANDARDS OF REVIEW § 7.02 ("[T]he major difference between direct and collateral review is the remarkably deferential review that must be given to state court factfindings . . . .").

---

[3]He also neglects to mention that the case was abrogated by *Taylor v. Louisiana*, 419 U.S. 522 (1975).

[4]This ignorance or severe misunderstanding of the limited purpose of habeas is further evidenced by Petitioner's total lack of acknowledgement or discussion of the habeas standard of review in his brief in support.

Petitioner insists that *Strauder* is the "clearly established" authority that should guide this Court. ECF No. 12 at 4–5. But the Supreme Court has made clear that "clearly established Federal law" is limited to Supreme Court authority that "squarely addresses" the claim at issue and provides a "clear answer." *Wright v. Van Patten*, 552 U.S. 120, 125–26 (2008). And in "deciding what law is clearly established, federal courts must not frame Supreme Court holdings at 'a high level of generality.'" *Shirley v. Tegels*, No. 18-1713, 2023 U.S. App. LEXIS 5534, at *7 (7th Cir. Mar. 8, 2023) (quoting *Nevada v. Jackson*, 569 U.S. 505, 512 (2013)). "Doing so 'could transform even the most imaginative extension of existing case law into 'clearly established Federal law.'" *Id*. A case from 1879 addressing a state statute that expressly disqualified people of color from juror eligibility is a far cry from the instant case.

Here, two Black potential jurors (as well as a white potential juror) who expressed wariness of police due to negative interactions therewith were struck from the jury. Federal authority indisputably allows such a use of peremptory strikes. *See Carter*, 111 F.3d at 512 (affirming peremptory strike of Black potential juror who had "disagreements with her police officer boyfriend regarding the treatment of blacks by police" and who recounted "prior negative experiences with law enforcement officers"); *id*. at 513 ("Batson does not prevent consideration of a potential juror's own admitted prejudices just because the potential juror and the defendant are of the same race."); *United States v. Rudas*, 905 F.2d 38, 41 (2d Cir. 1990) (affirming peremptory strike as proper where "[t]he Government had a basis for believing that [potential juror] might be prejudiced against law enforcement officers and thus might not be an impartial juror" after potential juror described a negative altercation with a police officer); *United*

*States v. Gibson*, 105 F.3d 1229, 1232 (8th Cir. 1997) (affirming use of peremptory strike as valid where potential juror "had been the victim of a serious crime and expressed her dissatisfaction with law enforcement officials' treatment of the situation"); *United States v. Brooks*, 2 F.3d 838, 841 (8th Cir. 1993) (affirming strike of Black potential juror and holding that his experience of police brutality was a "race-neutral reason" for striking him "even though the repeated application of the reason might result in the disproportionate removal of black prospective jurors"); *United States v. Estimable*, 437 F. App'x 23, 25 (2d Cir. 2011) (potential juror's negative experience with police was legitimate non-discriminatory rationale for strike); *Green v. Tavis*, 414 F.3d 288, 300–301 (2d Cir. 2005) (confirming that a potential juror's "negative feelings about the police" is a race-neutral explanation for a peremptory strike); *Pirtle v. Dewitt*, 31 Fed. Appx. 191, 192–93 (6th Cir. 2002) ("Peremptory strikes based on a juror's perceived hostility to law enforcement are permissible."); *United States v. Moreno*, 878 F.2d 817, 820–21 (5th Cir. 1989) (confirming that prosecutor's detection of "a hostile attitude toward police officers" was valid, race-neutral basis to exercise peremptory strike).

And "[a]lthough Supreme Court decisions provide the relevant lodestar for cases under AEDPA review, if a state court's reasoning largely follows circuit precedent, that is persuasive evidence the state court did not improperly apply the Supreme Court caselaw." *Minnick v. Winkleski*, 15 F.4th 460, 470 (7th Cir. 2021). Such is the case here.

5.    **CONCLUSION**

For the reasons described herein, the Court must deny Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), a petitioner must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). No reasonable jurists could debate whether the petition has merit. The Court must, therefore, deny Petitioner a certificate of appealability.

Accordingly,

**IT IS ORDERED** that Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, ECF No. 1, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the Clerk of Court replace Warden Dylon Radtke with Warden Michael Meisner on the docket;

**IT IS FURTHER ORDERED** that a certificate of appealability be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 21st day of April, 2023.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.